1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                          ----oo0oo----

11

12   CYTOSPORT, INC., a California        NO. CIV. 2:10-700 WBS KJM
     Corporation,
13
              Plaintiff,                  MEMORANDUM AND ORDER RE:
14                                        MOTIONS TO DISMISS AND TO
         v.                               AMEND
15
     CYTOGENIX SPORTS LABORATORIES,
16   SRL, a Barbados Corporation,

17            Defendant.
     _____/
18

19                          ----oo0oo----

20          Plaintiff CytoSport, Inc. ("CytoSport"), brought this

21   action against defendant Cytogenix Sports Laboratories, SRL

22   ("Cytogenix Sports Laboratories"), alleging trademark

23   infringement and other claims.  Defendant now moves to dismiss

24   for lack of personal jurisdiction and insufficient service of

25   process.  Plaintiff also moves for leave to amend its First

26   Amended Complaint ("FAC").

27   I.   Factual and Procedural Background

28          Plaintiff is a California corporation headquartered in

                                  1

Benecia, California, and is in the business of manufacturing and marketing various dietary supplement products using a family of trademarks that employ the prefix "Cyto," including "CytoSport," "Cyto Gainer," and "CytoMax." (FAC ¶¶ 1, 8, 10-13.) Defendant is a "Barbados society."[1] (Id. ¶ 2.) Plaintiff alleges that defendant is marketing and promoting products called "Cytonox," "Cytocell," and "Cytogenix," which directly compete with plaintiff's "Cyto" products. (Id. ¶¶ 18-20, 24-26, 30-32.) Defendant admits that it is the "owner" of trademarks for Cytonox and Cytocell, which it licenses to Iovate Health Sciences International, Inc. ("Iovate International"), a Canadian corporation, but claims that it is only a "repository of trademark rights." (Skinner Decl. in Supp. of Def.'s Mot. to Dismiss ("Skinner Decl.") ¶¶ 5-6 (Docket No. 24).)

Plaintiff brought this action against defendant on March 23, 2010 (Docket No. 2), and filed the FAC on October 27, 2010. (Docket No. 12.) The FAC alleges claims for trademark infringement, unfair competition, and trademark cancellation. (Id.) On November 8, 2010, Iovate International filed a declaratory judgment action against CytoSport in the Western District of New York, seeking a judgment that its use of Cytogenix Sports Laboratories' trademarks does not infringe on CytoSport's rights. (Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem.") at 2:19-24 (Docket No. 21).)

---

[1]     Defendant was dissolved on January 4, 2010. (Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem.") at 1:21-22 (Docket No. 21).) However, defendant does not dispute that it remains an appropriate defendant apart from the personal jurisdiction and service issues. (Def.'s Reply Mem. in Supp. of Mot. to Dismiss ("Def.'s Reply") at 12:5-15 (Docket No. 48).)

1    The names of all the potentially interested parties
2   require clarification.  Currently involved in the suit are
3   CytoSport as plaintiff and Cytogenix Sports Laboratories as
4   defendant.  The parties mention Cytogenix Laboratories, SRL
5   ("Cytogenix Laboratories"), as an entity that might actually own
6   some of the trademarks at issue.  Cytogenix Laboratories, like
7   Cytogenix Sports Laboratories, is a Barbados corporation, now
8   dissolved, with the same address and the same business model of
9   acting as a "repository of trademark rights."  (See Def.'s Reply
10  Mem. in Supp. of Mot. to Dismiss ("Def.'s Reply") at 1:15-2:5
11  (Docket No. 48).)  There are also multiple Iovate-related
12  corporations, including Iovate International, Iovate Health
13  Sciences U.S.A. Inc., and Iovate Health Sciences Inc.  (See id.
14  at 2:6-19.)

15    Soon after plaintiff filed the initial Complaint, it
16  entered into settlement discussions with counsel for defendant.
17  (Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") at
18  3:17-18 (Docket No. 42).)  Counsel for defendant entered an
19  appearance in the case on October 13, 2010.  (Docket No. 9.)
20  During the settlement negotiations, plaintiff proposed a
21  settlement that included defendant and "Iovate Health Sciences"
22  as defendants.  (Pl.'s Opp'n at 4:1-2.)  In response, defendant's
23  counsel deleted both defendants as parties to the agreement, and
24  added "Iomedix Trademark Ltd." as defendant, listing its place of
25  business as 381 North Service Road West, Oakville, Ontario L6M
26  0H4.  (Id. at 4:2-9.)  In a later version, Iomedix was removed by
27  defendant, and "Cytogenix Trademark Ltd." was listed as
28  defendant, with the same address in Ontario.  (Id. at 4:10-13.)

3

1   When settlement discussions broke down, plaintiff served the

2   Complaint on defendant at the address in Ontario.  (Id. at 4:22-

3   24.)  Records on file with the Canadian Intellectual Property

4   Office relating to the trademarks at issue specify that the

5   Ontario address was also the address of defendant's designated

6   representative regarding trademark applications or registrations

7   in Canada, Jo-Ann Heikkila.  (Id. at 4:25-28; Def.'s Reply at

8   13:26-14:16.)  The FAC was similarly served.  (Def.'s Mem. at

9   9:1-6.)  Defendant's actual address is in Barbados.  (Def.'s Mem.

10  at 8:10-12.)

11          Defendant now moves to dismiss the FAC pursuant to

12  Federal Rule of Civil Procedure 12(b)(2) for lack of personal

13  jurisdiction and Rule 12(b)(5) for insufficient service of

14  process.  Plaintiff moves for leave to amend its FAC to include

15  Iovate Health Sciences International, Inc., and Iovate Health

16  Sciences U.S.A. Inc. as defendants and to add one more cause of

17  action.

18  II.  Discussion

19          A.   Motion to Dismiss

20               1.   Service of Process

21          Federal courts cannot exercise personal jurisdiction

22  over a defendant without proper service of process.  Omni Capital

23  Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987).

24  Insufficient service can result in dismissal under Federal Rule

25  of Civil Procedure 12(b)(5).  To determine whether service of

26  process was proper, courts look to the requirements of Federal

27  Rule of Civil Procedure 4.  See Fed. R. Civ. P. 4.  Rule 4(h)

28  governs service over domestic and foreign corporations.

1    Rule 4(h)(2) provides that a foreign corporation may be

2  served in "a place not within any judicial district of the United

3  States, in any manner prescribed by Rule 4(f) for serving an

4  individual, except personal delivery . . . ."  Fed. R. Civ. P.

5  4(h)(2).  Rule 4(f) governs service of an individual in a foreign

6  country and states that service abroad is to be effected "by any

7  internationally agreed means of service that is reasonably

8  calculated to give notice, such as those authorized by the Hague

9  Convention on the Service Abroad of Judicial and Extrajudicial

10  Documents."  Fed. R. Civ. P. 4(f)(1).

11    The Convention on Service Abroad of Judicial and

12  Extrajudicial Documents in Civil and Commercial Matters, Nov. 15,

13  1965 (Hague Service Convention), (1969) 20 U.S.T. 361, T.I.A.S.

14  No. 6638, referenced in Rule 4(f)(1), is a multi-national treaty

15  that governs service of summons on persons in signatory foreign

16  countries.  Volkswagenwerk Aktiengesellschaft v. Schlunk, 486

17  U.S. 694, 698 (1988).  Each member state must establish a

18  "central authority" for receiving and processing requests for

19  service upon defendants residing within the state.  Id. at

20  698-99.  Once a central authority receives a request in the

21  proper form, it must serve the documents by a method prescribed

22  by the internal law of the receiving state or by a method

23  designated by the requester and compatible with that law.  Id. at

24  699.  A signatory to the Convention may also consent to other

25  methods of service within its boundaries.  See 20 U.S.T. 361,

26  T.I.A.S. No. 6638, Arts. 8, 10.  Barbados is a signatory to the

27  Convention.  See Societe Nationale Industrielle Aerospatiale v.

28  U.S. Dist. Court for the Southern District of Iowa, 482 U.S. 522,

1  524 n.1 (1987).  Even if plaintiff's method of service would have
2  been proper under the Hague Convention, the address to which
3  service was effected was not defendant's proper address.

4       However, even if service was not accomplished in
5  conformance with Rule 4, "[s]o long as a party receives
6  sufficient notice of the complaint, Rule 4 is to be 'liberally
7  construed' to uphold service."  Travelers Cas. & Sur. Co. of Am.
8  v. Brenneke, 551 F.3d 1132, 1135 (9th Cir. 2009) (quoting Chan v.
9  Soc'y Expeditions, Inc., 39 F.3d 1398, 1404 (9th Cir. 1994)).
10 The Ninth Circuit applies a flexible approach to determine
11 whether to permit the defective service to stand.  In Borzeka v.
12 Heckler, 739 F.2d 444, 447 (9th Cir. 1984), the Ninth Circuit
13 adopted a rule permitting courts to overlook a non-compliant
14 service of process provided that (1) the party to be served
15 received actual notice, (2) the defendant would not be prejudiced
16 by the defect in service, (3) there was a justifiable excuse for
17 the failure to properly serve, and (4) the plaintiff would be
18 severely prejudiced if the complaint were dismissed.  Id.

19      Defendant does not argue that it did not have actual
20 notice or that it would be prejudiced by maintaining the action
21 (see Def.'s Reply at 15:11-12, n. 12), and the court finds that
22 the first two prongs are therefore met.  Defendant, which had
23 been in settlement discussions with plaintiff for several months
24 after the complaint was filed, was certainly on notice of the
25 suit and cannot have been prejudiced by the non-compliant
26 service.  Furthermore, defendant did not inform plaintiff that
27 service of the initial Complaint was insufficient, and thus
28 plaintiff proceeded to serve the FAC in the same fashion.

1        As to whether plaintiff had a justifiable excuse for
2   failure to properly serve, it has sufficiently demonstrated that
3   the confusion surrounding each of the relevant parties and their
4   addresses constituted a justifiable excuse.  CytoSport attempted
5   service of the Complaint and the FAC on Cytogenix Sports
6   Laboratories at the address given to it by defendant's counsel
7   multiple times during settlement discussions.  (See Pl.'s Opp'n
8   at 4:2-13.)  That address was also the address on file with the
9   Canadian Intellectual Property Office for Cytogenix Sports
10  Laboratories.  (Id. at 4:25-28.)  While Cytogenix Sports
11  Laboratories also had an address in Barbados, the court can
12  understand plaintiff's confusion.  In light of the fact that
13  defendant does not contest actual notice, and thus no harm
14  occurred as a result of the improper service, the court finds
15  that plaintiff had a justifiable excuse for the attempted service
16  in Canada.

17        Finally, plaintiff has shown that it would be
18  prejudiced if the non-compliant service resulted in dismissal of
19  the suit.  If the suit were dismissed for non-compliance with the
20  rules of service, plaintiff could properly serve defendant and
21  start the suit over again.  While there is no evidence that
22  plaintiff would be barred from refiling the case in the Eastern
23  District of California, the parties seem to agree that the first-
24  to-file rule would then potentially result in transfer of the
25  newly re-filed case to the Western District of New York, where
26  Iovate International's declaratory judgment case would have
27  become the first-filed action upon dismissal of the instant
28  action.  (See Pl.'s Opp'n at 20:13-27; Def.'s Reply at 16:1-9.)

The prejudice described is thus essentially that of being denied
plaintiff's choice of forum.  Dismissal and subsequent re-filing
solely to perfect service of process would also unnecessarily
burden the resources of the parties and the court.  Denying
plaintiff its choice of forum may not be especially prejudicial.
However, given the complete lack of prejudice to defendant, the
fact that actual notice was clearly accomplished, and the
confusion, if not purposeful obfuscation on the part of
defendant, leading to the technical defect in service, the court
finds that plaintiff substantially complied with Rule 4.
Accordingly, the court will not dismiss the FAC for failure to
properly serve defendant.  See Borzeka, 739 F.2d at 447.

### 2.   Personal Jurisdiction

A plaintiff has the burden of establishing that the
court has personal jurisdiction over a defendant.  Doe v. Unocal
Corp., 248 F.3d 915, 922 (9th Cir. 2001) (citing Cubbage v.
Merchent, 744 F.2d 665, 667 (9th Cir. 1984)).  On a motion to
dismiss, a plaintiff "need make only a prima facie showing of
jurisdictional facts . . . .  That is, the plaintiff need only
demonstrate facts that if true would support jurisdiction over
the defendant."  Id. (quoting Ballard v. Savage, 65 F.3d 1495,
1498 (9th Cir. 1995)).  When not directly controverted, a
plaintiff's version of the facts must be taken as true, and
conflicts between the facts contained in the parties' affidavits
should be resolved in favor of the plaintiff.  Id.  Once a
defendant has contradicted the allegations contained in the
complaint, however, a plaintiff may not rest on the pleadings,
but must present evidence which, if true, would support the

8

1  exercise of personal jurisdiction.  <u>Data Disc, Inc. v. Sys. Tech.</u>
2  <u>Assocs., Inc.</u>, 557 F.2d 1280, 1284-85 (9th Cir. 1977).

3      Pursuant to Federal Rule of Civil Procedure 4(k)(2),
4  known as the federal long-arm statute, a plaintiff can establish
5  jurisdiction over a defendant based on the aggregate contacts of
6  the defendant with the United States as a whole.  <u>Pebble Beach</u>
7  <u>Co. v. Caddy</u>, 453 F.3d 1151, 1155 (9th Cir. 2006).  To do so, the
8  plaintiff must prove three factors.  "First, the claim against
9  the defendant must arise under federal law.  Second, the
10 defendant must not be subject to the personal jurisdiction of any
11 state court of general jurisdiction.  Third, the federal court's
12 exercise of personal jurisdiction must comport with due process."
13 <u>Id.</u> at 1159 (internal citations omitted).

14      Here, the first factor is met because plaintiff brings
15 claims for trademark infringement under the Lanham Act, 15 U.S.C.
16 §§ 1051-1127.  The second factor is met if a defendant does not
17 identify another state court in which the suit could proceed.
18 <u>Holland Am. Line Inc. v. Wartsila N. Am., Inc.</u>, 485 F.3d 450, 461
19 (9th Cir. 2007).  If "defendant contends that he cannot be sued
20 in the forum state and refuses to identify any other where suit
21 is possible, then the federal court is entitled to use Rule
22 4(k)(2).  This procedure makes it unnecessary to traipse through
23 the 50 states . . . ."  <u>Id.</u> (quoting <u>ISI Int'l, Inc. v. Borden</u>
24 <u>Ladner Gervais LLP</u>, 256 F.3d 548, 552 (7th Cir. 2001)).
25 Defendant in this case has not identified any other jurisdiction
26
27
28

9

where suit is possible, so the second factor is satisfied.[2]

For the third factor, due process, the court asks whether the defendant "has certain minimum contacts with the relevant forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted). Sufficient "minimum contacts" can give rise to "general jurisdiction" or "specific jurisdiction." Unocal Corp., 248 F.3d at 923. General jurisdiction applies if the defendant's activities in the forum "are substantial, continuous and systematic," whereas specific jurisdiction applies if a defendant's "less substantial contacts with the forum give rise to the cause of action before the court." Id. Because plaintiff has not presented any argument in support of general jurisdiction over defendant in this action, the court will limit its analysis

───────────────

[2] Defendant does admit to being subject to personal jurisdiction in the United States District Court for the District of Columbia with respect to its trademark applications under 15 U.S.C. § 1071. (Def.'s Reply at 5:9-6:1.) This is insufficient to counter the second factor. Rule 4(k)(2) can be applied when a defendant is "not subject to jurisdiction in any state's courts of general jurisdiction." Fed. R. Civ. P. 4(k)(2)(A) (emphasis added). The United States District Court for the District of Columbia is not a state court of general jurisdiction within the meaning of the Rule; the state court of general jurisdiction in the District of Columbia is the Superior Court. See Andrade v. Jackson, 401 A.2d 990, 992-93 (D.C. 1979). The federal court for the District of Columbia is, like all federal courts, a court of limited jurisdiction, so defendant has not managed to avoid the application of Rule 4(k)(2). See Pharmachemie B.V. v. Pharmacia S.p.A., 934 F. Supp. 484, 488 (D. Mass. 1996) (exercising personal jurisdiction pursuant to Rule 4(k)(2) over defendant who consented to jurisdiction in the United States District Court for the District of Columbia).

1    to determining whether specific jurisdiction exists.

2         The Ninth Circuit analyzes specific jurisdiction
3    according to a three-prong test:

4         (1) The non-resident defendant must purposefully direct
          his activities or consummate some transaction with the
5         forum or resident thereof; or perform some act by which
          he purposefully avails himself of the privilege of
6         conducting activities in the forum, thereby invoking the
          benefits and protections of its laws;
7         (2) the claim must be one which arises out of or relates
          to the defendant's forum-related activities; and
8         (3) the exercise of jurisdiction must comport with fair
          play and substantial justice, i.e. it must be reasonable.
9

10   Yahoo! Inc., 433 F.3d at 1205-06 (quoting Schwarzenegger v. Fred
11   Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004)).   The
12   plaintiff bears the burden of satisfying the first two prongs of
13   the test.   Menken v. Emm, 503 F.3d 1050, 1057 (9th Cir. 2007).
14   If the plaintiff succeeds in satisfying both of the first two
15   prongs, "the burden then shifts to the defendant to present a
16   compelling case that the exercise of jurisdiction would not be
17   reasonable."   Id. (quoting Schwarzenegger, 374 F.3d at 802)
18   (internal quotation marks omitted).

19        At its base, due process seeks to ensure that a
20   defendant is not haled into court for contacts that are random,
21   fortuitous, or attenuated.   Burger King Corp. v. Rudzewicz, 471
22   U.S. 462, 475 (1985).   It places responsibility on a defendant's
23   own actions that create a connection with the forum.   Id.   The
24   Ninth Circuit's flexible approach allows a lesser showing of
25   contacts if considerations of reasonableness are met.   Ochoa v.
26   J.B. Martin & Sons Farms, Inc., 287 F.3d 1182, 1188 n.2 (9th Cir.
27   2002) ("Jurisdiction may be established with a lesser showing of
28   minimum contacts 'if considerations of reasonableness dictate.'"

1   (quoting Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.,
2   784 F.2d 1392, 1397 (9th Cir. 1986))).

3                  a.   Purposeful Availment

4           A showing that a defendant purposefully availed himself
5   of the privilege of doing business in a forum state typically
6   consists of evidence of the defendant's actions in the forum,
7   such as executing or performing a contract there.
8   Schwarzenegger, 374 F.3d at 802.   In this way, the defendant
9   purposely avails himself of "the privilege of conducting
10  activities within the forum State, thus invoking the benefits and
11  protections of its laws."   Hanson v. Denckla, 357 U.S. 235, 253
12  (1958).   In exchange for the forum state's benefits and
13  protections, the defendant must submit to the burden of
14  litigation in the forum state.   Burger King, 471 U.S. at 476.
15  Here, the "forum state" is the United States as a whole under the
16  federal long-arm statute.   Pebble Beach, 453 F.3d at 1159.

17          By submitting trademark applications for the "Cyto"
18  products to the United States Patent and Trademark Office
19  ("USPTO"), defendant purposefully availed itself of the privilege
20  of doing business in the United States.   See Monster Cable
21  Prods., Inc. v. Euroflex S.R.L., 642 F. Supp. 2d 1001, 1009 (N.D.
22  Cal. 2009) (application for trademark registration constitutes
23  substantial contact); cf. Deprenyl Animal Health, Inc. v. Univ.
24  of Toronto Innovations Found., 297 F.3d 1343, 1353 (Fed. Cir.
25  2002) (obtaining a patent constitutes purposeful availment);
26  Nat'l Patent Dev. Corp. v. T.J. Smith & Nephew Ltd., 877 F.2d
27  1003, 1010 (D.C. Cir. 1989) (en banc) ("By registering a patent
28  in the United States Patent Office, a party residing abroad

                                12

purposefully avails itself of the benefits and protections patent registration in this country affords.").

Furthermore, while the exact contours of the relationships within and between the Cytogenix companies and the Iovate companies are unclear at this point, it is clear that someone is currently using the marks in commerce in the United States. (See Bettilyon Decl. in Supp. of Opp'n to Def.'s Mot. to Dismiss ("Bettilyon Decl.") Ex. 5 (Docket No. 42 Ex. 1) (picture of packaging of Cytocell product)); see 15 U.S.C. § 1051(a)(3)(C) (requiring applicant for trademark registration to state that "the mark is in use in commerce"). Even if defendant merely licenses the marks to Iovate International, the ability to license trademarks registered with the USPTO for use in the United States allows the parties to take advantage of the rights and privileges of United States law. Cf. Deprenyl, 297 F.3d at 1353 ("Licensing the practice of the invention claimed in a United States patent constitutes additional purposeful availment of the benefits of United States patent law. . . . [T]he act of contracting for consideration in exchange for licensing the practice of an invention claimed in a United States patent constitutes purposeful availment of the benefits of United States patent law."). Thus, defendant has clearly purposefully availed itself of the rights and privileges of the United States.

b.   Claims Arise from Forum-Related Activities

The second prong in establishing whether defendant has sufficient minimum contacts to constitute specific personal jurisdiction requires plaintiff to show that its claims arise out of or relate to defendant's forum-related activities. Yahoo!

13

1  <u>Inc.</u>, 433 F.3d at 1206 (quoting <u>Schwarzenegger</u>, 374 F.3d at 802).

2  "This step explores the relationship between the cause of

3  plaintiff's harm and the defendant's acts identified as creating

4  purposeful contacts with the forum state." <u>Lake v. Lake</u>, 817

5  F.2d 1416, 1421 (9th Cir. 1987).  Courts evaluate this

6  relationship along a continuum.  On one end, where a defendant

7  has multiple and significant contacts to support general

8  jurisdiction, no relationship is needed between the contacts and

9  the cause of action.  On the other end, where there is only one

10  contact with the forum state, "the cause of action must arise out

11  of that particular purposeful contact of the defendant with the

12  forum state." <u>Id.</u>

13      As explained above, plaintiff has alleged that

14  defendant purposely availed itself of the benefits of the United

15  States both by applying for trademark registrations and by using

16  and licensing those marks in the United States.  The FAC alleges

17  that defendant "manufactures, markets and sells a powdered

18  nutritional supplement product using the mark Cytonox." (FAC ¶

19  18.)  The FAC makes similar allegations regarding "Cytocell" and

20  "Cytogenix." (<u>Id.</u> ¶¶ 24, 30.)  Defendant does not dispute the

21  fact that it applied for trademark applications, and admits that

22  it licenses the trademarks to Iovate International.

23      Defendant has, however, contradicted the allegations

24  regarding <u>use</u> of the products by submitting a declaration stating

25  that defendant only acts as a repository of trademark rights,

26  which it exclusively licenses to Iovate International, and that

27  it did not manufacture, advertise, promote, or sell any product

28  whatsoever. (Skinner Decl. ¶¶ 5-6, 8.)  In response, plaintiff

14

has submitted evidence that "Cytogenix Laboratories" is selling the products. (Bettilyon Decl. Exs. 3, 5.)  For example, plaintiff submits a picture of the Cytocell product, which prominently displays the words "Cytogenix Laboratories" above the name of the product, and includes the following language on the back of the product: "Distributed by Iovate Health Sciences U.S.A. Inc. . . . Made in the U.S.A. . . . The CytoCELL™ trademark is owned by Cytogenix Sports Laboratories." (Id. Ex. 5.)  Defendant responds by stating in a declaration that "Cytogenix Laboratories has always been a separate legal entity from Cytogenix Sports Laboratories, SRL ("CSL").  For example, the two companies have had separate bank accounts and neither acted as an agent or on behalf of the other." (Dohaney Decl. in Supp. of Def.'s Reply Mem. in Supp. of Mot. to Dismiss ¶ 4 (Docket No. 50).)  Defendant also contends that Cytogenix Laboratories, like Cytogenix Sports Laboratories, is merely a repository of trademark rights licensed to Iovate International, and the use of its name, itself a trademark, on a product does not indicate otherwise.  (Id. ¶¶ 6-7.)

        Even if defendant has not itself sold the products in the United States, which the court cannot determine at this time, plaintiff's claims arise from defendant's forum-related activities.  The Ninth Circuit applies a "but for" test to determine whether a claim arises from forum-related activities. Terracom v. Valley Nat'l Bank, 49 F.3d 555, 561 (9th Cir. 1995). This test asks whether, but for a defendant's contacts with the forum state, the plaintiff's claims against defendant would have arisen.  Id.  The answer here is clearly no.  But for defendant's

15

1  trademark applications and licensing agreement giving Iovate

2  International the exclusive right to sell the "Cyto" products in

3  the United States, plaintiff would not have claims for trademark

4  infringement and unfair competition regarding its "Cyto"

5  products.  Cf. Deprenyl, 297 F.3d at 1355 (patent infringement

6  litigation arose out of the contacts of "obtaining a United

7  States patent and negotiating an ongoing license of the claimed

8  invention").  In light of the trademark registration applications

9  and the licensing of the marks for use in the United States, the

10  court finds that plaintiff's claims arise from defendant's forum-

11  related activities.

12                  c.   Fair Play and Substantial Justice

13          Because plaintiff has satisfied the first two prongs of

14  the test for specific jurisdiction, the burden shifts to

15  defendant "to 'present a compelling case' that the exercise of

16  jurisdiction would not be reasonable." Menken, 503 F.3d at 1057

17  (quoting Schwarzenegger, 374 F.3d at 802).  To determine the

18  reasonableness of exercising jurisdiction over a defendant, the

19  court considers the following factors:

20          (1)  the  extent  of  the  defendant['s]  purposeful
            interjection  into  the  forum  state's  affairs;  (2)  the
21          burden on the defendant of defending in the forum; (3)
            the  extent  of  conflict  with  the  sovereignty  of  the
22          defendant's  state;  (4)  the  forum  state's  interest  in
            adjudicating the dispute; (5) the most efficient judicial
23          resolution of the controversy; (6) the importance of the
            forum  to  the  plaintiff's  interest  in  convenient  and
24          effective  relief;  and  (7)  the  existence  of  an  alternative
            forum.

25

26  Id. at 1058 (quoting CE Distrib., LLC v. New Sensor Corp., 380

27  F.3d 1107, 1112 (9th Cir. 2004)).

28          As to the first factor, some cases in the Ninth Circuit

                                      16

"have suggested that once the minimum contacts threshold is met the degree of intrusion into the forum becomes irrelevant." Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482, 1488 (9th Cir. 1993) (citing Corporate Inv. Bus. Brokers v. Melcher, 824 F.2d 786, 787 (9th Cir. 1987)); see Menken, 503 F.3d at 1062 (Bybee, J., concurring). Nonetheless, other cases provide that "[e]ven if there is sufficient 'interjection' into the state to satisfy the [purposeful availment prong], the degree of interjection is a factor to be weighed in assessing the overall reasonableness." Core-Vent Corp., 11 F.3d at 1488 (quoting Ins. Co. of N. Am. v. Marina Salina Cruz, 649 F.2d 1266, 1271 (9th Cir. 1981)) (alterations in original).

        Although defendant's contacts are sufficient to satisfy the first two prongs of the test for personal jurisdiction, the amount of interjection is not overwhelming.  For example, the parties have not presented information regarding the extent of defendant's activities in the United States, such as sales figures for the "Cyto" products.  Thus, this factor weighs slightly against the reasonableness of exercising personal jurisdiction over defendant.  Nonetheless, this factor does not "weigh[] heavily" in defendant's favor since defendant's contacts "were sufficient to meet the purposeful availment prong."  Id.

        Regarding the second factor, the court acknowledges that defendant, a Barbados corporation, would be burdened by litigating this case in California.  However, "with the advances in transportation and telecommunications and the increasing interstate practice of law, any burden is substantially less than in days past."  Menken, 503 F.3d at 1060 (quoting CE Distrib.,

1  380 F.3d at 1112).  Indeed, the Ninth Circuit provides that even
2  where a defendant must travel from a foreign country, "this
3  factor is not dispositive" as to the reasonableness of exercising
4  personal jurisdiction.  <u>Dole Food Co., Inc. v. Watts</u>, 303 F.3d
5  1104, 1115 (9th Cir. 2002) (citing <u>Sinatra v. Nat'l Enquirer,</u>
6  <u>Inc.</u>, 854 F.2d 1191, 1199 (9th Cir. 1988)); <u>see, e.g.</u>, <u>Harris</u>
7  <u>Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.</u>, 328 F.3d
8  1122, 1132-33 (9th Cir. 2003); <u>Core-Vent Corp.</u>, 11 F.3d at 1488-
9  89.  Therefore, although this factor weighs in defendant's favor,
10 the court does not find it wholly persuasive.

11      The third factor concerns the extent to which the
12 district court's exercise of jurisdiction would conflict with the
13 sovereignty of Barbados, defendant's state of residence.
14 "[F]oreign nations present a higher sovereignty barrier than that
15 between two states within our union." <u>Marina Salina Cruz</u>, 649
16 F.2d at 1272.  However, since the dispute arises out of United
17 States trademark law and concerns products sold in the United
18 States, and defendant does not argue that Barbados has any
19 interest in the suit, the court finds no compelling sovereignty
20 concern.

21      As to the fourth factor, the United States has a strong
22 interest in providing redress for violations of its trademark
23 laws.  <u>See</u> <u>Life Alert Emergency Response, Inc. v. Lifealert</u>
24 <u>Security, Inc.</u>, No. CV 08-3226, 2008 WL 5412431, at *7 (C.D. Cal.
25 Dec. 29, 2008) ("[T]he United States has a strong interest in
26 applying its own trademark law . . . ."); <u>Ind. Plumbing Supply,</u>
27 <u>Inc. v. Standard of Lynn, Inc.</u>, 880 F. Supp. 743, 749 (C.D. Cal.
28 1995) ("trademark infringement . . . has as a principal purpose

18

1  the protection of the public from confusion"). Therefore, this
2  factor weighs strongly in favor of exercising personal
3  jurisdiction over defendant.

4          The fifth factor concerns the efficiency of the forum.
5  In evaluating this factor, courts look primarily at where the
6  witnesses and the evidence are likely to be located. <u>Sinatra</u>,
7  854 F.2d at 1200.  This factor "is no longer weighed heavily
8  given the modern advances in communication and transportation."
9  <u>Panavision Int'l, L.P. v. Toeppen</u>, 141 F.3d 1316, 1323 (9th Cir.
10 1998).  Plaintiff is located in California, defendant has its
11 address in Barbados, and the defendants plaintiff seeks leave to
12 include are located in Ontario, Canada, and the Western District
13 of New York.  The Eastern District of California is as efficient
14 a forum as any other.  This factor is therefore neutral.

15         The convenience and effectiveness of relief for
16 plaintiff obviously weigh in favor of its choice of forum.
17 However, courts have given little weight to a plaintiff's
18 inconvenience in litigating in another forum. <u>See Ziegler v.</u>
19 <u>Indian River Cnty.</u>, 64 F.3d 470, 476 (9th Cir. 1995).  This
20 factor weighs slightly in favor of exercising personal
21 jurisdiction over defendant.

22         Finally, as explained above, defendant has not
23 consented to the exercise of personal jurisdiction in any other
24 statutorily proper forum for this dispute.  This factor weighs
25 strongly in favor of exercising personal jurisdiction.

26         Ultimately, although some of the foregoing factors
27 favor defendant, the court concludes that defendant has not
28 presented a "compelling case" that the exercise of personal

jurisdiction over it would be unreasonable.  See Panavision, 141
F.3d at 1324 ("[W]e conclude that although some factors weigh in
[defendant's] favor, he failed to present a compelling case that
the district court's exercise of jurisdiction . . . would be
unreasonable.").  Indeed, "[t]he only case in which the Supreme
Court has held that these factors determined the question of
personal jurisdiction was in a suit between two foreign
corporations in which the Court divided evenly over whether the
minimum contacts were sufficient."  Menken, 503 F.3d at 1063 n.1
(Bybee, J., concurring) (citing Asahi Metal Indus. Co., Ltd. v.
Superior Court of Cal., 480 U.S. 102, 107 (1987)).

        The court finds that it has personal jurisdiction over
defendant.  It is reasonable and does not offend "traditional
notions of fair play and substantial justice," Int'l Shoe, 326
U.S. at 316, to require defendant to submit to the burden of
litigation.  Accordingly, defendant's motion to dismiss for lack
of personal jurisdiction will be denied.

        B.  Motion to Amend

        Plaintiff has moved for leave to amend the FAC to
include Iovate Health Sciences International, Inc., and Iovate
Health Sciences U.S.A. Inc. as defendants and to add one more
cause of action.  Federal Rule of Civil Procedure 15 empowers the
parties to agree to amendments and alternatively directs the
court to freely grant leave to amend "when justice so requires."
Fed. R. Civ. P. 15(a)(2).  "[T]his policy is to be applied with
extreme liberality."  Morongo Band of Mission Indians v. Rose,
893 F.2d 1074, 1079 (9th Cir. 1990); see Breier v. N. Cal.
Bowling Proprietors' Ass'n, 316 F.2d 787, 790 (9th Cir. 1963)

("[L]eave to amend should be allowed unless the complaint 'cannot under any conceivable state of facts be amended to state a claim.'" (quoting <u>Alexander v. P. Mar. Ass'n</u>, 314 F.2d 690, 694 (9th Cir. 1963))).

Courts commonly consider four factors when deciding whether to grant a motion for leave to amend a complaint: (1) bad faith on the part of the movant; (2) undue delay in filing the motion; (3) prejudice to the opposing party; and (4) the futility of the proposed amendment. <u>Roth v. Garcia Marquez</u>, 942 F.2d 617, 628 (9th Cir. 1991).

Given the fact that these proceedings are still in the initial stages, defendant cannot seriously accuse plaintiff of undue delay or bad faith. Plaintiff was justifiably confused, as has been the court, about the relevant parties that should be sued, and brought this motion to amend within nine days of learning that Iovate International brought a declaratory judgment action against it in New York. (<u>See</u> Mem. of P. & A. in Supp. of Pl.'s Mot. for Leave ("Pl.'s Mem.") at 1:27-2:4, 2:14-15.) Defendant characterizes plaintiff's suit against only Cytogenix Sports Laboratories as "strategic[]" behavior (Def.'s Opp'n to Pl.'s Mot. for Leave at 2:17); the court is inclined to view it as mere confusion. Whatever the reason, it does not rise to the level of bad faith.

"Prejudice" exists where amendment will significantly hinder a defendant's ability to defend against the plaintiff's claims, as in cases where discovery has already been completed or when the amendment will require relitigation of significant issues. <u>See</u> <u>Ascon Props., Inc. v. Mobil Oil Co.</u>, 866 F.2d 1149,

21

1  1161 (9th Cir. 1989); <u>Georgiou Studio, Inc. v. Boulevard Invest,</u>

2  <u>LLC</u>, 663 F. Supp. 2d 973, 978 (D. Nev. 2009).  The court has not

3  yet issued a scheduling order in this matter.  No discovery has

4  occurred and no trial date has been set.  There is no indication

5  that anyone would be prejudiced by the amendment.

6        Finally, amendment would not be futile.  In fact, the

7  amendment would add relevant parties to the suit, allowing an

8  eventual judgment to be binding as to both the owner and the

9  exclusive licensee of the trademarks at issue.  (<u>See</u> Pl.'s Mem.

10  at 4:17-19.)  Defendant argues that the suit could be adequately

11  heard in the Western District of New York.  However, the

12  possibility of suit against Iovate International in another forum

13  does not make this action futile.  Indeed, if the two cases are

14  as related as the parties make them out to be, this court would

15  presumably be the proper forum under the "first-to-file"

16  analysis.  <u>See</u> <u>Wright v. RBC Capital Mkts. Corp.</u>, No. Civ. S-09-

17  3601 FCD GGH, 2010 WL 2599010, at *5 (E.D. Cal. June 24, 2010)

18  ("Where duplicative actions are filed in courts of concurrent

19  jurisdiction, the court which first acquired jurisdiction

20  generally should proceed with the litigation.").  Because

21  defendant has not shown bad faith, undue delay, prejudice, or

22  futility, and because the court freely gives leave to amend, the

23  court will grant plaintiff's motion to amend the FAC.

24        IT IS THEREFORE ORDERED that defendant's motion to

25  dismiss plaintiff's First Amended Complaint be, and the same

26  hereby is, DENIED.

27        IT IS FURTHER ORDERED that plaintiff's motion to amend

28  the First Amended Complaint be, and the same hereby is, GRANTED.

22

1         Plaintiff has twenty days from the date of this Order

2   to file an amended complaint consistent with this Order.

3   DATED:   December 21, 2010

4

5   WILLIAM B. SHUBB

6   UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28